UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LORI LEE PONCE, | Case No.: 3: 11-CV-172-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| U.S. GOVERNMENT, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

After the resolution of two motions to dismiss and the filing of three amended complaints, this action has boiled down to a single claim for violation of the due process clause based on allegations that the United States Government ("United States") failed to properly and timely process the workers' compensation claim of plaintiff Lori Lee Ponce ("Ponce"). The United States moved for summary judgment asserting that Ponce's claim is either barred by sovereign immunity or is

moot. In response to the motion for summary judgment, Ponce now moves to amend her complaint for a fourth time to add unnamed employees of the Department of Labor ("Department") and the Veteran's Administration ("VA") as defendants. The United States opposes the motion, arguing that the amendments would be futile in that Ponce has failed to alleged a constitutional violation, her claim against the individuals is not recognized as an actionable claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the individuals are protected by qualified immunity.

The court finds that while Ponce has arguably alleged a constitutional violation, the comprehensive remedial scheme of the Act in the federal employment context prevents the recognition of a *Bivens* remedy for the alleged violation. Accordingly, Ponce's motion to amend her Third Amended Complaint to add the individual employees responsible for processing her claim is denied.[1]

## *Background*

The basic facts of Ponce's claim have remain unchanged throughout the amendments to her complaints. On February 25, 2008, while allegedly performing her duties as a volunteer driver for the VA, Ponce tripped over a wheelchair and injured her knees, ankles, hands, back, and abdomen. (Third Am. Compl. ¶¶ 1, 5.) The VA had previously informed Ponce that as a volunteer, she was considered a without compensation employee and would be covered by the Federal Employees Compensation Act, 5 U.S.C. §§ 8101-8193 (the "Act") in the event she suffered an on-the-job injury. (Third Am. Compl. ¶¶ 3, 4.) Based on this information, Ponce filed a claim for workers'

---

[1] The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

compensation under the Act with the Department's Office of Workers' Compensation Programs ("OWCP"), which administers such claims. (*Id.* ¶¶ 4, 6.). (Third Am. Compl. ¶¶ 3, 4.) The claim was denied based on a finding that Ponce was not an "employee" under the terms of the Act at the time of her injury. (Third Am. Compl. ¶ 6.) Ponce submitted requests for reconsideration of the denial of her claim which were denied in administrative decisions, again based on findings that Ponce was not an employee covered by the Act.

On February 23, 2010, Ponce filed a federal tort claims notice based on the denial of her workers' compensation claim. (Third Am. Compl. ¶ 10.) By letter dated August 26, 2010, Ponce received notice that her administrative tort claim had been denied. (Third Am. Compl. ¶ 11.) Ponce filed this action on February 10, 2011. Subsequently, OWCP reviewed Ponce's workers' compensation claim on its own motion and, on June 1, 2012, issued a decision vacating its prior denial and finding that Ponce "was a Federal civilian employee who filed a timely claim." (Third Am. Compl. ¶ 11.)

Ponce alleges that OWCP has a "pattern and practice" of denying claims for volunteers and that the more than four-year delay in the determination that she was an employee covered by the Act violated her constitutional due process rights and delayed her medical treatment to her physical and emotional damage. (Third Am. Compl. ¶ 16.) Ponce seeks money damages for her injuries.

*Legal Standard*

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings, and states, in relevant part, that where a party has already been served with a responsive pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(1)-(2) (2011).

The court recognizes that a liberal standard is applied to motions for leave to amend. *AmerisourceBergen Co. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Even so, "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Id.*

*Discussion*

Ponce seeks leave to amend her complaint to substitute government employees for the United States in this action. Specifically, Ponce seeks to add a paragraph alleging that:

> Defendants multiple John and Jane Does are: those Department of Labor employees responsible for denying plaintiff's claims and then belatedly reversing that decision, but denying her full claim and those Veterans Affairs employees responsible for the FECA CA-16 information and the employee status information provided to OWCP that resulted in the denial of plaintiff's FECA claim.

(Proposed Fourth Am. Compl. ¶ 7.) The amendments are intended to state a claim for money damages against federal officials for constitutional violations under *Bivens*. The United States argues that such amendment would be futile in that Ponce has failed to allege a constitutional violation, her claim against individual employees is not recognized under *Bivens*, and the individual employees are entitled to qualified immunity.

I. Constitutional Violation

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-01 (9th Cir. 2008). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process." *Id*. at 1090.

"When a government-created property interest is at stake, due process principles require at

least notice and an opportunity to respond in some manner, whether in writing or at an oral hearing, before termination of that interest." *Raditch v. United States*, 929 F.2d 478, 480 (9th Cir. 1991). Unreasonable delay in the provision of a post-deprivation hearing may also support a procedural due process claim. "Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process." *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975).

The Act provides a post-deprivation process for a claimant receiving an unfavorable decision from the OWCP. Depending on the type of decision, a claimant may request a hearing before an OWCP hearing representative, or request that the record be reviewed by such representative; request reconsideration; or file an appeal with the Employees' Compensation Appeals Board. 20 C.F.R. §§10.600, 10.615 (2013). The United States asserts that because Ponce did not pursue her administrative appeal options, the United States was not on notice of any requirement to undertake review of Ponce's claim and, therefore, could not have unconstitutionally delayed the processing of such claim.

Ponce specifically alleges that she submitted requests for reconsideration of OWCP's determination that she was not an employee for purposes of the Act. Neither party has offered as evidence the various decisions of the OWCP or the documents requesting reconsideration of those decisions by Ponce.[2] Accordingly, the court is limited to the allegations of the complaint in

---

[2] While the court generally limits is review to the allegations of the complaint on a motion to dismiss, the court may also consider documents referenced in the complaint but not physically attached thereto where the authenticity of such documents are not questioned by any party. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998).

considering whether Ponce has adequately alleged that she pursued her administrative appeal options.

Viewing the allegations of the proposed complaint as true, and in a light most favorable to Ponce, the court finds that Ponce has alleged a viable claim for violation of her constitutional right to procedural due process based on the delay in properly processing her disability claim. This is consistent with this court's previous ruling that virtually identical allegations in Ponce's Second Amended Complaint "properly alleged procedural irregularities that deprived her of her due process rights." *Ponce v. U.S. Government*, No 3:11-CV-172-AC, 2012 WL 3597565, at *3 (D. Or. Aug. 17, 2012)

II. Viability of *Bivens* Claim

In *Bivens*, the Supreme Court recognized a private right of action for money damages against federal officials alleged to have violated a citizen's constitutional rights despite the absence of any federal statute creating liability. *Bivens*, 403 U.S. 388. Such a cause of action will not exist, however, where the defendant establishes that "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed equally effective" or the existence of "special factors counseling hesitation in the absence of affirmative action by Congress." *Carlson v. Green*, 446 U.S. 14, 18-19 (1980)(citing *Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228, 245-47 (1979)).

The United States argues that Ponce is unable to state a *Bivens* claim because the Act provides an adequate, alternative existing process for protecting her interests. In the alternative, the United States argues that even if the Act does not provide a remedy for Ponce's constitutional violations, factors exist which prevent the extension of a remedy under *Bivens*.

The Act is a federal workers' compensation scheme intended to provide an exclusive remedy for work-related injuries to federal employees. The Act provides that "[t]he United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a)(2010).[3] Liability under the Act with regard to the injury or death of an employee:

> is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute." 5 U.S.C. § 8116(c)(2010).

Congress has given the Secretary of Labor ("Secretary") exclusive authority to administer the Act and to decide all questions arising under the Act, including the question of coverage. 5 U.S.C. §§ 8145, 8149 (2010); *see also Markham v. United States*, 434 F.3d 1185, 1187 (9th Cir. 2005). The Secretary has delegated responsibility for administering the Act to the Director of the OWCP. 20 C.F.R. § 10.1 (2010). The action of the Secretary in allowing or denying payment of benefits under the Act are "final and conclusive for all purposes and with respect to all questions of law and fact" and are "not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b).

Ten years after *Bivens*, the Eastern District of New York allowed a federal employee to pursue a *Bivens* claim against other postal employees based on an alleged violation of the employee's

---

[3] There are exceptions to coverage if the injury or death is "(1) caused by willful misconduct of the employee; (2) caused by the employee's intention to bring about the injury or death of himself or of another; or (3) proximately caused by the intoxication of the injured employee." 5 U.S.C. § 8102(a)(2010).

Page 7 - OPINION AND ORDER                                                                                    {SIB}

procedural due process rights caused by defendants' intentional failure to submit and/or process his claim under the Act. *Grichenko v. United States Postal Serv.*, 524 F. Supp. 672, 677 (E.D.N.Y. 1981). The plaintiff, a postal worker, was injured while at work when a object flew into his eye, resulting in a detached retina. *Id*. at 673. The worker filed a disability claim under the Act three-to-four months after the incident with the assistance of two of the individual defendants. *Id*. After making a few inquiries about the status of his claim, none of which were answered, the plaintiff learned just after the two-year anniversary of the incident that no disability claim had ever been filed by the Postal Service. *Id*. at 674. Six months later, the plaintiff filed a notice of claim with the Postal Service and, within a month, was advised that his claim had been denied as untimely. *Id*. The OWCP alternatively found the evidence presented by the plaintiff was insufficient to establish that the plaintiff suffered an on-the-job injury. *Id*. The claim was again disallowed by the Department on appeal based on the insufficient evidence finding. *Id*.

The plaintiff then filed an action in federal court asserting negligence claims based on the presence of the foreign bodies in the air and the failure to provide safety glasses and adequate first aid treatment. *Id*. The court dismissed these claims finding them preempted by the Act. *Id*. The plaintiff also asserted *Bivens* claims for violations of his due process rights for damages caused by the failure to timely process his disability claim. *Id*. at 675. The court recognized that the plaintiff's constitutional claims were separate from the substantive eye injury claim, not dependent on the outcome of the claim and, therefore, not preempted by the Act. *Id*. The court then considered whether the plaintiff could assert a *Bivens* type action. *Id*.

At the outset, the court recognized the Supreme Court's expansion of "the *Bivens*-type remedy to actions brought under the Due Process clause of the Fifth Amendment." *Id*. (citing *Davis*,

442 U.S. 228). In considering the plaintiff's claims in light of the two-part test identified in *Carlson*, the court explained that the Act gives a disability claimant a legitimate expectation that his claim will be "properly and timely processed under the Act." *Id*. at 677. It then rejected the defendants' contention that the Act precludes a *Bivens* claim finding the absence of "special factors 'counseling hesitation' or suggesting the inappropriateness of a Bivens type action" and that the Act "does not provide an available, let alone substitute remedy for the constitutional violation asserted here." *Id*. at 677 (citing *Carlson*, 446 U.S. at 19). The court further stated the creation of a *Bivens* claim under these circumstances "serves a deterrent purpose" as well. *Id*. at 677. The fact that the defendants intentionally deprived the claimant of his right to present a disability claim "warrant[s] the availability of a strong deterrent." *Id*. at 677.

After *Grichenko*, the Supreme Court began restricting the use of *Bivens* to create new claims based on alleged constitutional violations. In *Bush v. Lucas*, 462 U.S. 367, 380 (1983), the Court refined the "special factors counseling hesitation" element, stating that the pivotal issue was not whether Congress had already provided the particular remedy sought, but rather who should decide whether such a remedy should be provided:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step-by-step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that the existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights.

*Id*. at 388. In light of the elaborate and comprehensive scheme already in place to protect federal employees and redress the improper actions of supervisors, the Court refused to recognize a new

*Bivens* claim to compensate the plaintiff for emotional distress relating to the violation of his First Amendment rights to freedom of speech, even while acknowledging that the existing remedies did not provide complete relief. *Id*. at 388, 390. The Court effectively found that the Congressional creation of a comprehensive remedial scheme protecting the federal work force was a "special factor" militating against the creation of a *Bivens* remedy, noting specifically that "Congress is in a better position to decide whether or not the public interest would be served" by creating a new *Bivens* claim. *Id*. at 390 . The court stated:

> In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees of the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but is also may inform itself through factfinding procedures such as hearings that are not available to the courts.

*Id*. at 389.

Five years later, the Supreme Court refused to recognize a *Bivens* claim for social security claimants based on alleged violations of their procedural due process rights by government officials caused by the delay in the restoration of their disability benefits. *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). In doing so, the court relied on the elaborate remedial scheme created by Congress in the Social Security Act. *Id*.

The Court specifically recognized that its "more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts. The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Id*. at 421-22. Summarizing the holdings of two of those "more recent decisions", including *Bush*, the Court explained that the "concept of 'special factors counseling hesitation in the absence of affirmative

action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Id*. at 423.

The Court acknowledged that the Social Security Act did not provide a remedy, in money damages, for the unconstitutional conduct of government officials that results in the wrongful denial or delay of benefits, and that if the claimant's benefits were fully restored, the claimant would lack standing to assert a constitutional claim. *Id*. at 424. However, the court likened the claimants' position to that of the employee in *Bush,* noting that the Social Security Act represents an even more elaborate scheme than the civil service system considered in *Bush*, and finding that such a scheme established an intentional decision by Congress not to provide consequential damages for the unconstitutional deprivation of a statutory right. *Id*. at 425-26. The Court then refused to distinguish *Bush* based on an argument that the plaintiff in *Bush* received a form of remedy – reinstatement – for the alleged constitutional violation while the claimants at hand received only what they were already entitled to had there been no constitutional violation – disability benefits. *Id*. at 427. The Court explained that:

> In neither case, however, does the presence of alleged unconstitutional conduct that is not *separately* remedied under the statutory scheme imply that the statute has provided "no remedy" for the constitutional wrong at issue.
>
> The remedy sought in *Bush* was virtually identical to the one sought by respondents in this case: consequential damages for hardships resulting from an allegedly unconstitutional denial of a statutory right (Social Security benefits in one instance and employment in a particular Government job in the other). In light of the comprehensive statutory schemes involved, the harm resulting from the alleged

>constitutional violation can in neither case be separated from the harm resulting from the denial of the statutory right. Respondents' effort to separate the two does not distinguish this case from *Bush* in any analytically meaningful sense.

*Id*. at 427-28. The Court concluded by stating that:

>We agree that suffering months of delay in receiving the income on which one has depended for the very necessities of life cannot be fully remedied by the "belated restoration of back benefits." . . . Congress, however, has addressed the problems created by state agencies' wrongful termination of disability benefits. Whether or not we believe that its response was the best response, Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program. Congress has discharged that responsibility to the extent that it affects the case before us, and we see no legal basis that would allow us to revise its decision.

*Id*. at 428-29 (emphasis in original)(citations omitted).

The restriction of the *Bivens* remedy by the Supreme Court was more recently recognized in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001). The Court definitively stated that "[i]n 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct. Where such circumstances are not present, we have consistently rejected invitations to extend *Bivens*. *Id*. at 70 (emphasis in original).

Since *Bush* and *Chilicky*, federal courts have consistently refused to recognize a *Bivens* remedy when Congress has provided a statutory scheme to address the underlying claim. This is equally true when the statutory scheme provided by Congress is the Act. In *Berry v. Hollander*, 925 F.2d 311 (9th Cir. 1991), the Ninth Circuit denied a federal employees request to pursue a *Bivens* claim based on violations of his due process rights in light of various existing statutory remedies, specifically noting that a federal physician discharged for disability may seek a remedy under the

Act. *Id*. at 315 ("Although these remedies do not guarantee full and independent compensation for constitutional violations suffered by a VA physician, they do indicate a congressionally-authorized and comprehensive remedial scheme sufficient to preclude additional forms of relief.").

In two related cases filed in the District Court for the District of Columbia, the court addressed constitutional claims asserted by postal workers who had been exposed to anthrax while on the job. The first plaintiff alleged due process claims under *Bivens* based on the Postmaster's concealment of the presence of anthrax, and danger of infection, at the facility. *Richmond v. Potter*, Civil Action No. 03-00018 (CKK), 2004 WL 5366540 (D.D.C. Sept. 30, 2004). The court generally noted that "*Bivens* actions are an exceedingly rare legal breed whose extinction may well be nigh; 'recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts.' " *Id*. at *12 (quoting *Chilicky*, 487 U.S. at 421). It recognized that the Act was available to plaintiff as a remedy and specifically held that the Act "represents a comprehensive remedial scheme created by Congress that precludes the creation of a *Bivens* action." *Id*. at *14. The plaintiffs in the second case asserted *Bivens* claims against post office officials for violations of their rights to procedural and substantive due process based on conduct of defendants that prevented them from pursing available claims with regard to anthrax exposure. *Briscoe v. Potter*, 355 F. Supp. 2d 30 (D.D.C. 2004). The court acknowledged the nearly three-decade trend of the Supreme Court to limit the extension of *Bivens* liability in any new context and noted that this hesitation was particularly relevant in the "employer-employee relationship between the federal government and its employees." *Id*. at 38 (citing *Bush*, 462 U.S. 367). The court questioned the plaintiffs' reliance on *Grichenko*, noting it was not a strong precedent as it was issued before *Chilicky*, in which the Supreme Court "significantly limit[ed] the availability of a *Bivens* suit when an alternative

administrative process exists." *Id*. at 41.  The court held that in light of the plaintiffs "access to a full range of administrative and contractual fora to remedy the harm" lead by the Act, the plaintiffs were not entitled to pursue a *Bivens* claim. *Id*. at 39, 42.  The Court of Appeals for the District of Columbia affirmed both opinions, stating emphatically that:

> We conclude that the plaintiffs' *Bivens* claims are precluded by an 'elaborate, comprehensive scheme' that Congress has provided to govern employees' injuries in federal workplaces. Under the Federal Employees Compensation Act (FECA), the government must 'pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." FECA provides the exclusive remedy for [plaintiffs'] injuries.

*Briscoe v. Potter*, 171 Fed. Appx. 850, *1 (C.A.D.C. 2005); *Richmond v. Potter*, 171 Fed. Appx. 851, *1 (C.A.D.C. 2005).

A plaintiff's constitutional claims for excessive force and false arrest asserted under *Bivens* did not survive a motion to dismiss in *Hightower v. United States*, 205 F. Supp. 2d 146 (S.D.N.Y. 2002).  Relying on *Bush* and *Malesko*, the court rejected the plaintiff's "attempt to introduce *Bivens* into the field of federal employment." *Id*. at 155.  The court described the provisions of the Act and the Civil Service Reform Act as a "comprehensive structure created by Congress in the field of federal employment" which "foreclose[d] the fashioning of a private constitutional remedy, particularly where plaintiff, a federal employee, has already recovered through [the Act] for the injuries alleged sustained." *Id*.  In *Henderson v. United States Dep't of Labor*, Civil No. 6:06cv00009, 2008 WL 191307 (W. D. Va. Jan. 23, 2008), the court likened the Act to the Social Security Act and relied on *Chilicky* to dismiss the plaintiff's *Bivens* claim alleging the mishandling of her disability claim under the Act.  "[The Act], like the Social Security Act, is a comprehensive statutory mechanism indicative of congressional intent to create an exclusive set of remedies. Under

these circumstances a *Bivens* cause of action should not be implied." *Id*. at *4. Finally, the Eastern District of Virginia recently dismissed a *Bivens* claim based on violations of the plaintiff's due process rights when proper treatment for his workplace injuries was delayed. *Richards v. Central Intelligence Agency*, 837 F. Supp. 2d 574, 576 (E. D. Va. 2011). The court did so based on three factors: 1) the Act appears to provide an exclusive remedy for the conduct alleged; 2) "the significant role that federal employment plays in this case; and [3]) the substantial remedy available under [the Act] for the harm sustained." *Id*. at 577.

The court has found only one case issued after *Bush* and *Chilicky* in which a court found that a *Bivens* claim was not barred by the Act. In *Wilson-Sauls v. Curtis*, Civil No. 07-163-AS, 2008 WL 836417 (D. Or. March 26, 2008), the plaintiff asserted a *Bivens* claim based on violations of her Forth and Fifth Amendment rights when other federal employees improperly allowed an individual with a checkered past and disciplinary records to continue working for the federal government as a security guard. *Id*. at 9. The guard ran over the plaintiff with a car while both were on the job, resulting in serious and permanent injuries to the plaintiff. *Id*. The court denied defendants' motion to dismiss the *Bivens* claim as barred by the provisions of the Act, under which plaintiff was receiving disability benefits, finding that "[i]t does not appear from the plain language of the statute that Congress intended [the Act] to bar a *Bivens* action against a Federal agent in their individual capacity." *Id*. at *10. The court acknowledged the exclusivity provision of the Act but found that it did not apply to violations of plaintiff's constitutional rights. *Id*. The court also noted that the Act does not provide for a jury trial or punitive damages, both of which are available under *Bivens*. *Id*. at 11.

While citing *Bush* as authority for the two-part test, the *Wilson-Sauls* court did not

Page 15 - OPINION AND ORDER                                                                                                              {SIB}

specifically consider *Bush* or *Chilicky,* or the restrictions on *Bivens* remedies created therein. It also did not consider cases issued after *Bush* and *Chilicky* in which several courts held that the comprehensive nature of the Act and its implications in the federal employer-employee contest cautioned against the creation of a *Bivens* remedy, including *Berry*, a Ninth Circuit case. Accordingly, the court respectfully disagrees with the finding in *Wilson-Sauls* as not in line with Supreme Court and Ninth Circuit precedent, as well as other relevant federal case law.

Ponce has not specifically alleged the type of damages she is seeking for the individual defendants' alleged violations of her due process rights. To the extent she is seeking damages related to increased physical injury or medical costs caused by the delay in the processing and acceptance of her disability claim, those damages are related to her underlying injury and may be considered, and possibly awarded, by the OWCP as part of her disability claim. To the extent she is seeking damages for emotional distress and mental anguish caused by the individuals' conduct, this court will follow the clear trend of the Supreme Court and other federal courts and decline the opportunity to expand *Bivens* in this context. In doing so, the court acknowledges that Congress is uniquely suited to create remedies in the federal employment arena; the existence of a comprehensive statutory scheme to address complaints relating to on-the-job injuries to federal employees, which represents a congressional unwillingness to expand remedies beyond those afforded by the Act; and the well-documented reluctance of federal courts to recognize a *Bivens* remedy in light of the existence of a comprehensive statutory scheme, especially in the federal employment context. Additionally, the court recognizes that Ponce has a remedy under the Act for any exacerbation of her initial injury and related increase in medical costs and that the absence of a remedy for emotional distress does not necessitate the implication of a *Bivens* remedy.

Ponce is precluded from stating a *Bivens* claim against the individual defendants for violation of her procedural rights to due process. Accordingly, Ponce's proposed amendments to her Third Amended Complaint are futile and her motion to dismiss must be denied.

II. <u>Qualified Immunity</u>

In the event the court found Ponce was able to allege a *Bivens* claim, the United States argued the individual defendants were protected by qualified immunity. In light of the court's conclusion that Ponce is unable to assert a viable *Bivens* claim, the United States' qualified immunity argument is moot and will not be addressed.

*Conclusion*

Ponce's motion (#89) to amend her Third Amended Complaint is DENIED.

DATED this 21st day of November, 2013.

    /s/ John V. Acosta
    JOHN V. ACOSTA
    United States Magistrate Judge